605 A.2d 311

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David Eugene ADAMS.**

Supreme Court of Pennsylvania.

Argued May 10, 1990.

Decided March 13, 1992.

Syndi L. Norris, Asst. Dist. Atty., for appellant.

Taylor P. Andrews, Chief Public Defender, Scott D. Moore, Mechanicsburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## ORDER

PER CURIAM:

Order affirmed.

PAPADAKOS, J., files a dissenting opinion in which LARSEN and McDERMOTT, JJ., join.

PAPADAKOS, Justice, dissenting.

The Court has opted to dismiss this case by per curiam order of affirmance. For the reasons that follow, I would reverse. The issue in this case is whether the police acted properly in stopping a car and seizing the defendant for drunk driving.

The defendant was convicted in a non-jury trial of driving under the influence and driving under suspension (summary). The trial court rejected his motion to suppress, but

the Superior Court reversed. The Commonwealth files this appeal.

The facts indicate that at approximately 4:00 a.m., a police officer received information that a stolen Dodge automobile was driving on and churning up the turf of a local high school stadium. The information included the names of two alleged perpetrators, Scott Cramer and Floyd Killian. The policeman quickly located the car parked on a nearby street covered with mud and grass. As the officer was examining the car, a second vehicle, a Ford, was seen by the officer speeding down the street but slowed quickly when it approached and passed the positioned patrol car.

The officer alerted a fellow officer down the street, and they both began to follow the Ford. The Ford drove to a parking place which later was demonstrated to be the home of the driver and defendant in this case. Shortly before the car parked, however, both police cars activated their warning signals. After the Ford parked, the driver darted out of the car and staggered along the street. The police officer, who had pulled up parallel to defendant's vehicle, gave chase on foot and arrested the defendant for drunk driving.

On these facts, the defendant sought suppression on the grounds that the police lacked any reasonable suspicion to make an investigatory stop. The central question is what prompted the officer to follow and stop the Ford, culminating in the arrest.

The following testimony was given by the arresting officer on both direct and cross-examination at the Suppression Hearing at pp. 7–17:

Q. What kind of vehicle came down Burd Street?

A. It was a Maverick, a Ford.

Q. What drew your attention to that particular vehicle?

A. The rate of speed at which it was traveling. And when the three individuals—I could see that there were three individuals. When they got almost parallel to me, I was in the parking lot, they applied the brakes and slowed real quickly, and then approached

the stop sign at the intersection very slowly. Led me to believe they didn't want to draw attention to themselves. I assumed or thought it was possible then that Scott Cramer and Floyd Killian had obtained another vehicle and were trying to leave the area.

Q. Did you know this Scott Cramer and Floyd Killian on sight?

A. Yes, I do.

Q. So if you had seen them you would know them?

A. Yes, I did.

     *     *     *     *     *     *

Q. And, in fact, isn't it true you testified at the preliminary hearing that he was not driving erratically when he went by other than the fact that you thought he was going fast when he went by, isn't that true?

A. That is correct.

Q. And you were looking for two individuals who were in a Ford, correct?

A. No, sir, they were in a Dodge.

Q. Or in a Dodge. And this was a Ford that went by, correct?

A. Yes, sir.

Q. And isn't it true that you had no knowledge at all that the two individuals who you were looking for who had previously been in the Dodge had gone into a Ford, isn't that true?

A. I had no knowledge as to where they went at all.

Q. Okay. And isn't it true that, like you testified here today, that you thought it was this Mr. Cramer and Mr. Killian who were in this vehicle, isn't that true?

A. I thought there was a possibility it could be them, yes.

Q. And you weren't stopping this individual for drunk driving, but suspecting that it was these two people

who committed this criminal mischief, isn't that correct?

A. That is correct.

    \*    \*    \*    \*    \*    \*

Q. Brown? But you had no identification as Mr. Cramer and Mr. Killian being in that car, is that correct? You didn't know it was them, isn't that correct?

A. I thought it could be them.

    \*    \*    \*    \*    \*    \*

Q. Isn't it true that you stopped him based on a complete guess?

A. On a trained, educated guess, yes.

Q. Well, you had no description—a complete guess, when you had no, no clue at all as to Mr. Cramer and Mr. Killian getting into this Ford, isn't that correct?

A. With the totality of the circumstances, the possibility existed that they could be in that vehicle and leave the area.

Q. Then you weren't pulling him over for anything other than the fact that these people looked at you, was that the basis of your guess?

A. No, sir, I believe I testified that the vehicle was traveling at a high rate of speed and when they spotted me, they slowed.

Without addressing the fact that the officer saw the Ford speeding, the trial court concluded that there "are specific facts which could create a reasonable suspicion that the suspects were in the defendant's vehicle on the night in question. Accordingly, Officer Lingle had sufficient probable cause to conduct an investigative stop of defendant's vehicle." (Slip opinion, p. 5). The Superior Court reversed in a two-to-one memorandum opinion: "there was no reasonable suspicion of criminal activity on the part of the occupants of appellant's vehicle. The officer could not provide any specific facts for stopping the vehicle other than the allegation he thought it was speeding. In other words, there was not even a minor traffic violation upon

which to bottom the stop." (Slip opinion, p. 5). The opinion also noted that the police did not clock the Ford for speeding. The dissent simply concluded that "sufficient facts were present" to warrant the stop but did not pinpoint either speeding or suspicion that the suspects were in the Ford as the factual nexus for that stop.

Article I, section 8 of our State Constitution protects Pennsylvanians against "unreasonable searches and seizures." The predicate for "reasonableness" may be either the traditional requirement of probable cause or, in limited circumstances, something less as embodied in the familiar standard of "reasonable suspicion leading to an investigatory stop" found in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1988); this Court adopted *Terry* in *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969); the probable cause basis for search and seizure is discussed in *Commonwealth v. Richards*, 458 Pa. 455, 327 A.2d 63 (1974).

This case has been argued below by both sides as falling under *Terry* and its subsequent affirmation in *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). These arguments have revolved around the single issue of whether a chain of causation exists between police suspicions that the Ford contained the perpetrators and stopping the Ford itself.

I disagree with that analysis. The truth of the matter is that the police officer had articulable probable cause to follow the Ford and stop it based on his earlier observation that the car was speeding. It is obvious that the officer's testimony, as noted above, revealed mixed motives behind his pursuit of the Ford, but any failure to establish a linkage between his suspicion that the perpetrators in the Dodge were escaping then in the Ford cannot vitiate the independent fact of speeding as the basis of probable cause.[1]

---

1. I make no judgment on the merits of the Commonwealth's argument that reasonable suspicion existed to pursue the Ford because of the

Probable cause is present where the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information were sufficient to warrant a man of reasonable caution and belief to conclude that the suspect had committed or is committing a crime. *Commonwealth v. Rush,* 459 Pa. 23, 326 A.2d 340 (1974); *Commonwealth v. Norwood,* 456 Pa. 330, 319 A.2d 908 (1974); *Commonwealth v. Kenney,* 449 Pa. 562, 297 A.2d 794 (1972).

I would emphasize the fact that although defense counsel skillfully focused on the weakness of the officer's assertions regarding the alleged presence of the suspects in the Ford, the officer twice articulated his observation from plain view that the Ford had been speeding. The conduct of the Ford, of course, was not uncommon, and there is no reason to frustrate police pursuits aimed at determining whether the vehicle would speed up again. Because the Ford was driven in an unusual manner, it became susceptible to surveillance. *Commonwealth v. Murray,* 460 Pa. 53, 331 A.2d 414 (1975). I also find no relevance in the absence of a formal measurement of the Ford's speed or in the failure to cite the defendant with a traffic ticket. After all, driving under the influence and with a suspended license are themselves violations of the Motor Vehicle Code. An officer who stops a vehicle legally has the right to consider issuing whatever citation is deemed appropriate under the circumstances. It does not follow that the lack of a speeding ticket means that the Ford had not been speeding. See, *Commonwealth v. Swanger,* 453 Pa. 107, 115, 307 A.2d 875, 879 (1973); *Commonwealth v. Boyer,* 455 Pa. 283, 286, 314 A.2d 317, 318 (1974).

I would hold that the officer had probable cause to stop the car and I would reverse and reinstate the sentence of the trial court.

LARSEN and McDERMOTT, JJ., join this Dissenting Opinion.

officer's belief that the perpetrators who damaged the field were fleeing.