## Commonwealth v. Bucher

*Christopher D. Carusone, assistant district attorney,* for Commonwealth.

*Lawrence H. Hracho,* for defendant.

SMITH, *J.*, March 14, 1995—

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER IN DISPOSITION OF DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

*Findings of Fact*

(1) On May 13, 1994, Officer Barry L. Rambo was on routine patrol in a marked police car in the City of Reading.

(2) At approximately 12:09 a.m., while stopped in the 100 block of South 9th Street, City of Reading, Berks County, Pennsylvania, Officer Rambo noticed a red Eagle Talon pull alongside of his police cruiser and stop for a red light. Officer Rambo testified that when the light turned green the car remained stopped for approximately 30 seconds, the car then suddenly jerked forward and proceeded driving north on South 9th Street. South 9th Street has two lanes both running in the same direction.

(3) While following the vehicle, the officer noted that the car was driving in the middle of the road and occasionally drifted to the left. Officer Rambo admitted, however, that there are no painted lines on the road separating the lanes.

(4) As the vehicle was turning left onto Washington Street, Officer Rambo testified that the car almost (but did not) struck the curb. The vehicle then stopped for a traffic light at 8th and Washington Streets. As soon as the light turned green, Officer Rambo activated his overhead lights and siren. The officer testified that the car did not immediately stop but continued west eventually coming to a stop in the 500 block of Washington Street.

(5) The officer identified defendant, Kristen M. Bucher, as the driver and sole occupant of the vehicle. After requesting defendant's license and briefly speaking with her, the officer detected a strong odor of an alcoholic beverage on defendant's breath. The officer also testified that defendant's eyes were red and glassy and that her speech was slurred.

(6) Based on his observations, the officer requested defendant to perform a series of field sobriety tests, namely, the one-leg stand, finger to nose, and walk and turn tests. The officer demonstrated each of the tests to defendant before asking her to begin. Defendant failed all three tests.

(7) The officer then placed defendant under arrest for DUI, and transported her to St. Joseph's Hospital for a blood test. The defendant refused to submit to said test.

(8) Defendant was subsequently charged with one count of driving under the influence of alcohol.[1]

### Suppression Issue

Whether evidence surrounding defendant's arrest for driving under the influence of alcohol be suppressed on grounds that the officer lacked probable cause to stop defendant's vehicle.

### Conclusions of Law

(1) Both the United States Supreme Court and the Pennsylvania Supreme Court have determined that "[a] police officer may stop and briefly detain an individual if the officer has a reasonable suspicion, based on specific and articulable facts, that criminal activity may

---

1. 75 Pa.C.S. §§3731(a)(1).

be afoot." *Commonwealth v. Hamme*, 400 Pa. Super. 537, 540, 583 A.2d 1245, 1247 (1990) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969) and *Commonwealth v. Espada*, 364 Pa. Super. 604, 528 A.2d 968 (1987)).

(2) The same rule applies to police stops involving motor vehicles. *Id.; Commonwealth v. LaGamba*, 418 Pa. Super. 1, 10, 613 A.2d 1, 5 (1992), *alloc. denied*, 533 Pa. 608, 618 A.2d 399 (1992); *Commonwealth v. Adams*, 529 Pa. 458, 462, 605 A.2d 311, 313 (1992).

(3) Police also possess probable cause to stop a motorist when they have observed that individual commit a traffic code violation. See *Commonwealth v. Adams, supra* at 462, 605 A.2d at 313; *Commonwealth v. LaGamba, supra* at 10, 613 A.2d at 5. This is particularly true because: "[p]robable cause is present where the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information were sufficient to warrant a man of reasonable caution and belief to conclude that the suspect had committed or is committing a crime." *Commonwealth v. Adams, supra* at 463, 605 A.2d at 313. (citations omitted)

(4) In addition, it has been held that "erratic driving provides a sufficient, reasonable basis to support an investigatory stop." *Commonwealth v. Hamme, supra* at 540, 583 A.2d at 1247.

(5) Therefore, officers may stop a vehicle in two instances. First, police may conduct a "traffic stop" when they have "probable cause to believe that a traffic violation has occurred or a vehicle or licensing provision is being violated." *Commonwealth v. DeWitt*, 530 Pa. 299, 303-304, 608 A.2d 1030, 1031 (1992). Second, police may conduct an "investigative stop" when "the

officer has a reasonable suspicion, based on specific and articulable facts, that criminal activity may be afoot." *Hamme, supra* at 540, 583 A.2d at 1247. This court will now examine whether either of these two standards is applicable to the case at bar.

(6) In *Commonwealth v. McElroy*, 428 Pa. Super. 69, 76, 630 A.2d 35, 39 (1993), the court held that "articulable and reasonable grounds to suspect," rather than "probable cause," is the appropriate standard for determining whether a traffic stop was supported by a reasonable belief that the Vehicle Code had been violated.

(7) In the instant case, Officer Rambo stated that he did not observe defendant commit any traffic code violations. While defendant's driving may have raised the officer's suspicions, they did not constitute any known traffic violation. Therefore, the stop in this case could not have been a traffic stop as there was no violation of the Vehicle Code.

(8) This court has in the past held that erratic driving does warrant a brief investigatory stop of a vehicle. However, after reviewing the record in this case, this court finds that defendant's driving in this case does not qualify as "erratic." Admittedly, while defendant's driving may have aroused the officer's suspicions, they cannot properly be construed as erratic.

(9) This court must next address whether the stop in this case was a valid "investigatory stop."

(10) In *DeWitt,* the court held:

*"Terry* and its progeny recognize that some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are *justified by such substantial law enforcement interests that they may be made on less than*

*probable cause, so long as the police have an articulable basis for suspecting criminal activity." DeWitt, supra* at 307, 608 A.2d at 1034 (quoting *Commonwealth v. Lovette,* 498 Pa. 665, 673, 450 A.2d 975, 979 (1982)). (emphasis added)

The court in *DeWitt* went on to hold that where there is no evidence that a vehicle has engaged in any type of criminal activity a *Terry* stop is unwarranted. *Id.* Moreover, the court held that they "would be hard pressed to find that flight, in and of itself, constitutes reasonable suspicion of criminal conduct." *Id.* at 308, 608 A.2d at 1034.

(11) The alleged evidence of "criminal activity" in this case includes no instances of any violation of the Vehicle Code.

(12) While this court commends the officer's instincts in this case, we cannot solely rely on an inarticulate hunch to determine whether defendant's actions prior to the stop could be construed as reasonably suspicious. None of these actions taken alone could be considered criminal. Further, all of the factors whether considered together or separately did not give rise to a reasonable suspicion of illegal activity.

(13) Therefore, as the officer lacked articulable and reasonable grounds to suspect that defendant's car was presently engaged in criminal activity, the use of a *Terry* stop would be appropriate.

(14) In sum, this court finds that Officer Rambo did not have "articulable and reasonable grounds to suspect" that defendant had driven her car in violation of the Vehicle Code, or was presently engaged in criminal activity. The officer had therefore illegally stopped defendant's car when he smelled the odor of alcohol on defendant's breath, and observed numerous other indicia of intoxication. The further investigation in the

form of field sobriety tests was also tainted by the unwarranted stop. As such, pursuant to *Wong Sun v. United States,* 371 U.S. 471, 485 (1963), the fruits of the illegal search must be suppressed.

(15) For the foregoing reasons, this court now enters the following order:

## ORDER

And now, to wit, March 14, 1995, after a hearing held and upon further consideration of defendant's omnibus pretrial motion to suppress evidence, it is hereby ordered that defendant's motions to suppress are hereby granted.