534 A.2d 833

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Thomas JANIAK.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1987.

Filed Dec. 11, 1987.

Kenneth Osokow, Assistant District Attorney, Williamsport, for Com., appellant.

Nancy Butts, Williamsport, for appellee.

Before WIEAND, TAMILIA and CERCONE, JJ.

TAMILIA, Judge:

This is a timely appeal by the Commonwealth of a trial court Order granting appellee's motion to suppress evidence, in the form of the results of a blood test, obtained by police as the result of the police stopping appellee's automobile on September 12, 1986. Appellee is charged with driving under the influence of alcohol, 75 Pa.C.S. § 3731(a)(4).

The pertinent factual circumstances leading to appellee's arrest as found by the suppression court are as follows:

On September 12, 1986 two officers of the Williamsport Bureau of Police were in a police cruiser on duty in Williamsport at approximately 2:59 a.m. when they received a radio communication from County Communication facility that an individual had been reported in an intoxicated condition near gas pumps at a convenience store which was located one long block to the south and a long block to the west of the officers' location. That first dispatch indicated that the individual was about to drive away. The officers immediately turned in a southerly

direction and as they approached the intersection with the east-west street they received a second telecommunication that the individual was now driving in an easterly direction on West Third Street. That would mean, according to the report, the vehicle would be proceeding from right to left on the intersecting street. The officers had seen no traffic going in any direction on the street that they had been on originally, no traffic going in either direction on the north-south street that they were presently on, and there was only one vehicle on the east-west intersecting street. That vehicle was somewhat to the east of the convenience market proceeding in an easterly direction toward the officers. The officers waited until the vehicle passed their location and then they made a left turn so as to follow the vehicle. They immediately activated their lights and stopped the vehicle at the next intersection. The only observation that they made with respect to the manner of operation of the vehicle was that it was proceeding at 15 to 20 miles per hour. Both officers stated that the sole reasons for their stop were (a) the report that an intoxicated individual was operating the vehicle, and (b) their belief under all of the circumstances that the vehicle could only be the one in question.

(Slip Op., Raup, P.J., 2/4/87, pp. 1–2.)

We have before us the sole issue of whether the arresting officers had a legal basis to stop appellee's vehicle and investigate his condition.

The standard for appellate review of an Order suppressing evidence was well stated by our Court in *Commonwealth v. White,* 358 Pa.Super. 120, 123, 516 A.2d 1211, 1212–13 (1986):

Our scope of review is limited primarily to questions of law. *See Commonwealth v. Swint,* 256 Pa.Super. 169, 389 A.2d 654 (1978); *Commonwealth v. Chinea,* 246 Pa.Super. 494, 371 A.2d 944 (1977). We are bound by the suppression court's findings of fact, if those findings are supported by the record. *Commonwealth v. James,* 506 Pa. 526, 486 A.2d 376 (1985); *Commonwealth v. Brown,*

341 Pa.Super. 138, 491 A.2d 189 (1985). In determining whether the findings of fact are supported by the record, we are to consider only the evidence of the appellees and so much of the evidence of the appellant which, as read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. Hamlin,* 503 Pa. 210, 215–216, 469 A.2d 137, 139 (1983). It is for the suppression court as the trier of fact, rather than the reviewing court, to determine credibility. *Commonwealth v. Bonasorte,* 337 Pa.Super. 332, 486 A.2d 1361 (1984).

However, we are 'not bound by findings wholly lacking in evidence.' *Hamlin,* 469 A.2d at 139, *citing Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977). Nor are we bound by the suppression court's conclusions of law. *Commonwealth v. Lark,* 505 Pa. 126, 477 A.2d 857 (1984); *Commonwealth v. Scatena,* 332 Pa.Super. 415, 481 A.2d 855 (1984).

*See Commonwealth v. Monarch,* 510 Pa. 138, 507 A.2d 74 (1986); *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985).

Our courts have articulated guiding principles to protect the rights of the individual when confronted with a search and seizure of an automobile:

An individual has a reasonable expectation of privacy in an automobile and when a vehicle is stopped by a police officer, a seizure within the meaning of the Fourth Amendment has occurred. *Commonwealth v. Tarbert,* 348 Pa.Super. 306, 502 A.2d 221 (1985).

[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, *or that either the vehicle or an occupant is otherwise subject to seizure for violation of law,* stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. *Id.,* 348 Pa.Superior Ct. at 312, 502 A.2d at 224 (emphasis added), quoting *Delaware v. Prouse,* 440 U.S. 648, 663, 99

S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979); see also, *Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875 (1973).

*Commonwealth v. Edwards*, 355 Pa.Super. 311, 314, 513 A.2d 445, 446–47 (1986). "[I]t must be emphasized that any stop involves a balancing on the one hand, of the interest of private citizens in being free from unreasonable searches and seizures with, on the other hand, the societal interests in providing for the enforcement of the law for the protection of the community." *Commonwealth v. Palm*, 315 Pa.Super. 377, 382, 462 A.2d 243, 246 (1983). "To justify an investigative stop, a police officer must rely on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion'." *Commonwealth v. Mayo*, 344 Pa.Super. 336, 341, 496 A.2d 824, 826 (1985) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)).

The United States Supreme Court has been careful to point out:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary *Terry* [*supra*] recognizes that it may be the essence of good police work to adopt on intermediate response.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time....

*Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972) (citations omitted).

We held in *Commonwealth v. Benson*, 239 Pa.Super. 100, 107, 361 A.2d 695, 698 (1976), *aff'd per curiam*, 482 Pa. 1, 393 A.2d 348 (1978), that the "intermediate response" outlined in *Adams* permitted the police in the early stage of their investigative work to rely on radio information to make a stop of individuals suspected of criminal activity.

Likewise, in *Commonwealth v. Prengle*, 293 Pa.Super. 64, 437 A.2d 992 (1981), we found that information supplied to a police officer over a police radio that a burglary had been committed at a specific location, that the perpetrator would be driving a truck matching a particular description, and that the truck would be filled with certain stolen items allowed the officer to make an investigatory stop of a vehicle matching the description even though the officer had not *"personally* observed 'unusual conduct' " or criminal conduct from the vehicle.[1]  *Id.,* 293 Pa.Superior Ct. at 69, 437 A.2d at 994 (emphasis in original).  Additionally, the officer in *Prengle* upon receiving the radio broadcast proceeded to and positioned his vehicle near an exit ramp of an expressway near the reported location of the burglary in an effort to cut-off the reported vehicle.  Just some fifteen minutes from receiving the radio broadcast and only five minutes from reaching the exit ramp the officer in *Prengle* spotted the truck and made the stop.

As in *Prengle,* the officers here were informed by two radio communications that a crime, i.e. driving while under the influence, was being committed and, within minutes of the reports, while acting in response to the reports, the officers saw a vehicle driving on the exact roadway and coming from the exact direction the vehicle was reported to be proceeding from.  The trial judge found that based on its findings of fact "the police officers had reasonable grounds to believe that the individual who was the subject of the telephone calls in question was driving the vehicle which they in fact stopped." (Slip Op., Raup, P.J., 3/16/87, p. 1). We find no abuse of discretion on the trial court's part in its determination that appellant's vehicle was in fact the vehicle in the police radio broadcast.  Consequently, we find the police officers acted with reasonable suspicion and possessed specific and articulable facts which warranted the stop of appellant's automobile.  Therefore, we reverse the trial court's suppression Order and find the evidence ob-

1.  We specifically stated in *Prengle, supra,* 293 Pa.Superior Ct. at 70, 437 A.2d at 995, that: "[t]he facts of this case are illustrative of a proper investigatory stop and an incident frisk."

tained as a result of the investigatory stop performed by the officers is admissible.

We find *Commonwealth v. Lagana*, 356 Pa.Super. 132, 514 A.2d 179 (1986), relied upon by the trial court, to be distinguishable from the present circumstances. Although the investigating officer in *Lagana* acted on a radio broadcast, we found that because the description given in the broadcast was lacking in specifics and because there was no information linking the individual described with any crime, "the quantum of reasonable suspicion necessary even for a temporary stop was absent." *Id.*, 356 Pa.Superior Ct. at 137, 514 A.2d at 182. In *Lagana*, the only information broadcasted was that a white male, aged twenty to twenty-five, wearing a yellow raincoat and carrying a gun was present in the vicinity of a certain street intersection; when the officer arrived he testified it was raining and that there were between twenty to thirty people in the immediate area. The fact that the officer in *Lagana* was not acting on the investigation of a particular crime alone makes *Lagana* wholly distinguishable from the present situation, and coupled with the unspecific description which led to uncertainty in the identity of the individual stopped as being the one described and the conditions at the scene of the stop, we find *Lagana* is not controlling in this case.

Order reversed; case remanded for trial.

Jurisdiction relinquished.