613 A.2d 1

COMMONWEALTH of Pennsylvania, Appellant,

v.

Vincent LAGAMBA, Appellee.

Superior Court of Pennsylvania.

Argued May 28, 1992.

Filed July 30, 1992.

Petition for Allowance of Appeal

Denied Dec. 1, 1992.

2

Louis G. Stesis, Asst. Dist. Atty., Media, for Com., appellant.

Patrick J. Connors, Media, for appellee.

Before CIRILLO, POPOVICH and HOFFMAN, JJ.

POPOVICH, Judge:

This matter is on appeal by the Commonwealth from an order granting a motion to suppress.[1] We reverse.

As stated in *Commonwealth v. Hamlin*, 503 Pa. 210, 469 A.2d 137, 138–139 (1983):

> The well established judicial principle is that in reviewing a suppression court's ruling the appellate court is bound by factual findings supported by the record. [A]nd, [it] may not substitute [its] own findings for those of the suppression court. This principle of deference to trial courts has one important caveat however, appellate courts are not bound by findings wholly lacking in evidence.
>
> \* \* \* \* \* \*
>
> [W]here the Commonwealth is appealing the adverse decision of a suppression court, a reviewing court must consider only the evidence of the defendant's witnesses and so much of the evidence of the prosecution as read in the context of the record as a whole remains uncontradicted. [Citations omitted]

1. As a condition to securing a review of the order granting the motion to suppress, the Commonwealth has certified that the grant of the suppression motion will substantially handicap or terminate the prosecution of this matter. *Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

4

Viewed in light of *Hamlin*, and inasmuch as the defense presented no witnesses, the record indicates that at 12:15 a.m. on the 21st day of October, 1991, Officers Stufflet and Soule, patrolmen for the Nether Providence Township Police Department, were on "a car stop" near the intersection of Providence and Possum Hollow Roads.

It appears that Officer Soule had stopped a Maryland motorist in the southbound lane of Providence Road for driving with inoperable lights, and he ordered a tow truck to remove the vehicle from the site. Because southbound traffic would have to traverse the northbound lane to circumvent the congestion created on the two-lane highway by the two police cruisers, tow truck and motorist's automobile, Officer Stufflet began to direct traffic in the northbound lane of travel with the use of a hand-held flashlight. Both of the officers' vehicles were situated in the southbound lane of travel with the lights and flashers activated to alert motorists of their presence.

While attempting to stop northbound traffic, Officer Stufflet observed a vehicle approaching at a speed of 25–30 m.p.h.— the posted speed was 35 m.p.h. At a distance of 25–30 feet, the officer attempted to flag-down the driver by shining his flashlight on the roadway and across the windshield of the vehicle "at least 10, 12 times." The vehicle failed to stop until it was 15 feet past Officer Stufflet. To avoid being struck, the officer jumped onto the shoulder of the road.

During this time, Officer Soule was concentrating on writing tickets for the Maryland vehicle he had stopped in the southbound lane of travel. Nonetheless, "his attention was drawn" to Officer Stufflet ("just for a brief moment") as he (Stufflet) was "forced to get out of the way" of an oncoming motorist. At this point, Officer Soule exited his vehicle to investigate who the operator was and "what [the] problem was, why he hadn't stopped."

As Officer Soule asked for the driver's license and registration card, he detected a "strong odor of alcoholic beverage on or about [the appellee's] person." As a result, the appellee was asked to exit the vehicle and two field sobriety tests were

conducted in which he "had difficulty performing"[2]. Thereafter, he was arrested and charged with driving while under the influence of alcohol or a controlled substance.[3] 75 Pa.C.S.A. § 3731(a).

The appellee's motion to suppress was granted on the ground that the police's "stop" was illegal as lacking articulable facts giving rise to a reasonable suspicion that criminal activity was afoot. Because this was contrary to the laws of the Commonwealth, the court below suppressed any evidence seized as a result of the stop. This appeal followed.

It is the position of the Commonwealth that the police did not "stop" the appellee;[4] their interaction was a mere "encounter" authorized under the law and not "unreasonable" under the Fourth Amendment. In contrast, the court below and LaGamba are of the mind that the police did conduct a "stop" of the appellee in violation of the federal and state constitutions such that any evidence seized as a result thereof was illegal and justified the motion to suppress. See *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

It is well settled in this jurisdiction that:

... before a police officer may stop a single vehicle to determine whether or not the vehicle is being operated in compliance with the Motor Vehicle Code, he must have probable cause based on specific facts which indicate to him either the vehicle or the driver are in violation of the code.

*Commonwealth v. Swanger*, 453 Pa. 107, 307 A.2d 875, 879 (1973), citing *Almeida–Sanchez v. United States*, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Accord *Commonwealth v. Janiak*, 368 Pa.Super. 626, 534 A.2d 833, 834 (1987).

**2.** This information is recounted in the "Affidavit of Probable Cause" section of the criminal complaint executed by the complainant, Officer Soule.

**3.** The appellee was also charged with reckless driving and failure to obey an authorized person directing traffic. 75 Pa.C.S.A. §§ 3714, 3102. These offenses were dismissed by the District Justice.

**4.** See note 8, infra, and accompanying text.

6

■ As is evident from the language in *Swanger,* the officer's actions must be premised on specific facts reflective of a probable cause to believe that a violation of the Motor Vehicle Code has occurred. The suppression court, on this aspect, ruled that "Officer Soule emerged from his vehicle without witnessing the alleged incident and without any communication from Officer Stufflet." Opinion 11/7/91 at 4. This statement appears to be buttressed by the court's "Findings of Fact" at Points 9 & 20, which read, respectively:

Officer Soule was in his patrol car issuing a citation and did not witness the incident....

Officer Soule later admitted he did not see any violation of the Motor Vehicle Code by this [appellee].

These findings of fact are the underpinnings for the court's "Conclusions of Law" that the appellee's "motor vehicle stop [was] devoid of any reasonable suspicion of criminal activity ... [, and, therefore, a]ny subsequent evidence that flowed from the illegal stop was properly suppressed." *Id.* at 8.

■ However, we are "not bound by findings wholly lacking in evidence." *Hamlin,* supra, 503 Pa. at 214, 469 A.2d at 139, citing *Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977). Nor are we bound by the suppression court's conclusions of law drawn therefrom. *Janiak,* supra, 368 Pa.Super. at 628, 534 A.2d at 834, citing *Commonwealth v. Monarch,* 510 Pa. 138, 507 A.2d 74 (1986); *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985).

■ Instantly, our examination of the suppression transcript reveals that Officer Soule, *contrary to the suppression court's findings of fact, did witness* Officer Stufflet engaging in evasive tactics to avoid the appellee's oncoming vehicle prior to approaching LaGamba to inquire who he was and why he did not stop. To-wit, the relevant portions of the transcript provide:

BY MR. GALLANTINO [ATTORNEY FOR COMMONWEALTH]:

Q. Could you see what Officer Stufflet was doing to stop th[e appellee's] vehicle?

[OFFICER SOULE:]

A. I just glanced up. He was waving his flashlight attempting to stop the vehicle.

Q. *For how long did you see that vehicle?*

A. *Just for a brief minute.*

\* \* \* \* \* \*

Q. And then what did you do after the vehicle stopped?

A. I got out of my patrol vehicle and immediately went to the operator's side of the vehicle that had almost struck Officer Stufflet.

Q. What was your purpose for getting out of your vehicle and approaching the vehicle that had stopped?

A. I wanted to find out who the operator was and what the problem was.

Suppression Hearing Transcript 9/4/91 at 31–33 (Emphasis added). On cross-examination, the discourse between Officer Soule and counsel for the appellee reads in relevant part as follows:

BY MR. GROOVER [COUNSEL FOR APPELLEE]:

Q. All right. Okay, so [Officer Stufflet] would be approximately in front of your vehicle?

A. Yes, that's correct. \* \* \* I was able to see him, yes. \* \* \* I just glanced up. I saw the vehicle coming. Officer Stufflet may have yelled something. I don't know what brought my attention to it *but my attention was drawn to Officer Stufflet.*

\* \* \* \* \* \*

Q. So you didn't see [the appellee's vehicle] proceeding down the road, did you?

A. No.

Q. You weren't able to observe [the appellee] prior to the time he got to this scene [—supposedly a few feet from where Officer Stufflet was standing in the southbound lane of Providence Road—] that he was doing anything unlawful?

8

A. No, sir.[5]

 * * * * * *

BY MR. GROOVER:

Q. Now you say Officer Stufflet got out of the way. What did he do to get out of the way, sir?

A. He was forced to move quickly to the side of the road.

Q. What—okay. Now he's forced to move quickly. Did you see him make that movement?

A. *Yes, just out of the corner of my eye but I did observe him make that movement.*

Q. Okay. How far was the Lagamba vehicle away from him when he made that movement?

A. I would say maybe 25 to 30 feet, sir.

 * * * * * .*

Q. Could you indicate to His Honor when you looked up where was the Lagamba vehicle when you first saw it?

A. As I said it was approximately 25 to 30 feet from Officer Stufflet.

 * * * * * *

Q. That's when you first saw him?

A. That is correct.

 * * * * * *

Q. You have a police officer who's looking southbound in the middle of the road and you have a vehicle doing 25 to 30 miles an hour and how far was the Lagamba vehicle from [Officer Stufflet] when he jumped out of the way?

A. 25 to 30—just a few feet, just a few feet.

Q. Oh, he waited until the Lagamba vehicle was two or three feet away?

A. I guess he thought it was going to stop before it hit him. It wasn't going that fast. He was trying to stop the vehicle.

 * * * * * *

5. This response does not undermine the fact that Officer Soule did witness Officer Stufflet engage in evasive action when the appellee was within 2 to 3 feet of his person to avoid impact. See Suppression Hearing Transcript 9/4/91 at 39–45.

Q. What did you do after the Lagamba vehicle stopped?

A. I got out of my patrol vehicle and went over to the Lagamba vehicle.

Q. All right. Did you say anything to Mr. Lagamba?

A. Yes.

Q. What did you say to him, sir?

A. *I asked him what the problem was, why he hadn't stopped.*

Id. at 39–45 (Emphasis added). Accord "Affidavit Of Probable Cause" to Criminal Complaint: "The operator did not stop immediately and Officer Stufflet was forced to jump out of the way ... *Officer Douglas B. Soule* who was in a patrol vehicle on the southbound side of the road *did witness this incident....*" (Emphasis added)

Accordingly, in the absence of any factual basis to buttress the claimed illegal "stop" of the appellee, the conclusion of the court below to suppress evidence of the appellee's intoxicated condition is flawed as well.

 As was stated by this Court in *Commonwealth v. Ferraro,* 237 Pa.Super. 268, 352 A.2d 548, 550 (1975):

It is well settled that: "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." Indeed, it is quite clear that a police officer is justified in making a reasonable investigatory stop of a suspicious individual "in order to determine his identity or to maintain the status quo temporarily while obtaining more information ..." A police officer's authority to "stop and frisk" a citizen is predicated upon his observance of "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person(s) with whom he is dealing may be armed and dangerous ..." Furthermore, in order to justify a "stop and frisk" the police officer must be able to point to specific and articulable facts which taken together with rational inferences from those facts reasonably warranted the intru-

sion. "Thus, it is also clear that *an investigative stop of a moving vehicle to be valid must be based upon objective facts creating a reasonable suspicion that the detained motorist is presently involved in criminal activity.*" [Citations omitted; emphasis added]

More to the point, as remarked by our Supreme Court in *Commonwealth v. Murray*, 460 Pa. 53, 331 A.2d 414, 416–417 (1975):

If the alleged basis of a vehicular stop is to permit a determination whether there has been compliance with the Motor Vehicle Code of this Commonwealth, it is encumbent upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code. [Citations omitted]

Under the facts of the instant case, the record evidence suggests a basis for concluding that the vehicle's occupant was in violation of the Motor Vehicle Code. For instance, during the period in which the vehicle and its occupant were being observed by Officer Soule, one traffic law appeared[6] to be violated:

**§ 3102. Obedience to authorized persons directing traffic**

No person shall willfully fail or refuse to comply with any lawful order or direction of any uniformed police officer, sheriff or constable or any appropriately attired person, including an agent or employee of the funeral director during a funeral, authorized to direct, control or regulate traffic.

Amended August 5, 1991, P.L. 238, No. 26, § 11, 75 Pa.C.S.A. § 3102 (Supp.1992).

---

**6.** It is only the probability and not a prima facie showing that criminal activity is afoot which is the standard against which a police officer's intrusive conduct is to be judged. *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Marino*, 435 Pa. 245, 255 A.2d 911, 916 (1969).

■ The officer testified unequivocally that the "purpose" for exiting his vehicle and approaching the appellee was "to find out who the operator was and what the problem was * * * *why he hadn't stopped.*" Suppression Hearing Transcript 9/4/91 at 33 & 45 (Emphasis added). The intention of the officer becomes more manifest with the following day's issuance of a criminal complaint charging the appellee with, *inter alia,* violating Section 3102.[7] Cf. *Commonwealth v. Orwig,* 248 Pa.Super. 284, 375 A.2d 99 (1977); *Commonwealth v. Ferraro,* 237 Pa.Super. 268, 352 A.2d 548 (1975).

Thus, it was established that Officer Soule knew of facts justifying his continuing investigation on the basis of a possible violation of the Motor Vehicle Code. Contrast *Commonwealth v. Smith,* 225 Pa.Super. 509, 311 A.2d 716, 718 (1973).

■ We hold, therefore, that evidence which was later obtained (of intoxication) was not the "fruit" of an illegal search and seizure of the appellee.[8] *Wong Sun,* supra. It was, consequently, improper to suppress such evidence.

To elucidate, under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may stop a person if he observes specific instances of unusual and suspicious conduct on the part of the person that reasonably leads him to conclude that criminal activity is afoot. See *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276, 279 (1969). In this case, the officer observed the appellee almost hit Officer Stufflet, despite the use of a hand-held flashlight to control traffic in the

7. We deem the fact that this charge was dismissed at the District Justice level to be of no moment since we are concerned with the *objective* facts confronting the officer, and his statements in regard thereto, as the linchpin in assessing the propriety of his actions: Did the objective facts create a reasonable suspicion that the detained motorist was presently involved in criminal activity. See *Commonwealth v. Orwig,* 248 Pa.Super. 284, 375 A.2d 99, 101 (1977); see also *Commonwealth v. Ferraro,* 237 Pa.Super. 268, 352 A.2d 548, 550 (1975), citing *Commonwealth v. Murray,* 460 Pa. 53, 61, 331 A.2d 414, 418 (1975).

8. We would note, however, that the appellee was subjected to a search and seizure when he was approached and asked to produce his driver's license and registration card. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Smith,* 225 Pa.Super. 509, 311 A.2d 716, 717 (1973).

southbound lane of Providence Road. Such conduct is proscribed by 75 Pa.C.S.A. § 3102.

When the officer asked to see the appellee's driver's license and registration card,[9] he "observed a strong odor of alcoholic beverage on or about Mr. Lagamba's person." Suppression Hearing Transcript 9/4/91 at 45. "These facts support a finding that the [police's] decision to ... [perform a field sobriety test was] a product of the lawful *Terry* stop.... The test was conducted to obtain information as to whether appell[ee] was intoxicated." *Commonwealth v. Kloch,* 230 Pa.Super. 563, 327 A.2d 375, 382 (1974).

Accordingly, premised on the discussion herein, we hold that the suppression court erred in granting the appellee's motion to suppress.

Order reversed; jurisdiction relinquished.

---

**9.** The officer was justified in detaining for a brief investigatory purpose the appellee on the scene for a possible violation of the Motor Vehicle Code—obedience to authorized persons directing traffic. Cf. *Commonwealth v. Dennis,* 289 Pa.Super. 305, 433 A.2d 79, 82 n. 7 (1981).