COMMONWEALTH of Pennsylvania, Appellee,

v.

David E. LOHR, Appellant.

Superior Court of Pennsylvania.

Argued April 16, 1998.
Filed July 22, 1998.

Dennis G. Kuftic, Edinboro, for appellant.

Patrick M. Carey, Asst. Dist. Atty., Erie, for Com., appellee.

Before DEL SOLE, TAMILIA and EAKIN, JJ.

EAKIN, Judge:

David Lohr appeals from the judgment of sentence entered following his conviction for driving under the influence of alcohol (DUI), carrying or transporting open containers of alcoholic beverages and driving under suspension. We affirm.

While on patrol shortly before 8:00 p.m., on October 5, 1996, Officer James Stephen Flanagan received a radio dispatch indicating a possible DUI in the vicinity of the Giant Eagle parking lot in Edinboro. The report indicated a citizen telephoned the police department, stating he watched appellant erratically drive his red and white Ford Bronco into the parking lot and enter the store, seemingly intoxicated. The caller explained he followed appellant into the store and was able to smell alcohol coming from his general direction.

Rather than hanging up the phone after reporting this information, the caller remained on the line with the dispatcher while Officer Flanagan proceeded to the scene. As the citizen reported appellant was getting into his vehicle, Officer Flanagan entered the parking lot and saw a red and white Bronco backing out of a parking space. Based on the dispatch message derived from the citizen's telephone call, the officer initiated a traffic stop.[1]

Upon approaching the vehicle, the officer noticed appellant had bloodshot and glassy eyes and a strong odor of alcohol on his breath. The officer had appellant perform three field sobriety tests; he did poorly on all three. The officer found two opened bottles of beer in the vehicle, and determined

---

1. The Commonwealth suggests Officer Flanagan based his stop of appellant's vehicle on more circumstances than the caller's report via the dispatcher. However, the following exchange transpired between defense counsel and the officer during the suppression hearing:

Q. [T]he only reason you stopped this vehicle was because of what you were told from the dispatcher about a possible DUI; is that true?
A. Yes.
Q. Not from anything else you saw?
A. No.
N.T., 4/1/97, at 13–14.

appellant's drivers license was suspended. Appellant's blood alcohol content was .182%.

Appellant was arrested and charged with DUI, carrying or transporting open containers of alcoholic beverages and driving under suspension. He filed a motion to suppress the evidence obtained from the stop of his vehicle. Following a hearing, this motion was denied. On June 9, 1997, a jury convicted appellant as charged, and he was sentenced to prison. This appeal followed.

The sole issue presented is whether Officer Flanagan legally stopped appellant's vehicle. While appellant claims he was subject to an unlawful search and seizure in violation of both the fourth amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution, the Commonwealth contends the police engaged in a wholly proper "investigative stop" of the vehicle, armed with an articulable and reasonable suspicion of impaired driving. We agree with the Commonwealth, and conclude the trial court properly denied appellant's motion to suppress.

■ The standard governing review of a suppression court's denial of a motion to suppress is well established:

> In an appeal from the denial of a motion to suppress our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Carlson*, 705 A.2d 468, 469 (Pa.Super.1998) (citations omitted).

■ It is well established "when the police stop a vehicle in this Commonwealth for investigatory purposes, the vehicle, and its occupants are considered 'seized' and this seizure is subject to constitutional constraints." *Commonwealth v. Knotts*, 444 Pa.Super. 60, 64, 663 A.2d 216, 218 (1995). An investigatory stop of an automobile is justified only when it is based upon objective facts creating a reasonable suspicion the vehicle's occupants are presently involved in criminal activity. *Commonwealth v. Valenzuela*, 408 Pa.Super. 399, 408, 597 A.2d 93, 98 (1991). To meet this standard, the officer must point to specific articulable facts which, together with the rational inferences therefrom, reasonably warrant the intrusion. *Commonwealth v. Williams*, 419 Pa.Super. 380, 385, 615 A.2d 416, 419 (1992), *alloc. denied*, 533 Pa. 651, 624 A.2d 110 (1993).

■ To have reasonable suspicion, police officers need not personally observe the illegal or suspicious conduct, but may rely upon the information of third parties, including "tips" from citizens. *Commonwealth v. Wright*, 448 Pa.Super. 621, 630, 672 A.2d 826, 830 (1996). Naturally, "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Commonwealth v. Ogborne*, 410 Pa.Super. 164, 169, 599 A.2d 656, 659 (1991), *alloc. denied*, 530 Pa. 631, 606 A.2d 901 (1992)(*quoting Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). Thus, in *Commonwealth v. Wilson*, 424 Pa.Super. 110, 622 A.2d 293 (1993), *alloc. denied*, 536 Pa. 623, 637 A.2d 283 (1993), we examined the requirements surrounding reasonable suspicion for automobile stops emanating from information provided by a tipster and explained:

> Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were reliable.

*Id.*, at 115, 622 A.2d at 295–96 (citations omitted).

When the underlying source of the officer's information is an anonymous call, the tip should be treated with particular suspicion. *See Commonwealth v. Jackson*, 548 Pa. 484, 490, 698 A.2d 571, 573 (1997)(referring to anonymous tip as basis for *Terry*[2] stop and frisk). However, a tip from an informer known to the police may carry enough indicia of reliability for the police to conduct an investigative stop, even though the same tip from an anonymous informant would likely not have done so. *See id. (citing Alabama v. White, supra )*. Indeed, "a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk." *Id.*

Guided by these precepts, we must determine whether there were articulable and reasonable grounds for the stop of appellant's vehicle. The information implicating the vehicle was provided by a citizen caller who specifically detailed the incident to the police, indicating it was from ongoing personal observation. Thus the police knew how the caller knew what he averred, and that he had corroborated his visual conclusion with his olfactory sense; the police knew the subject of intoxication was within the ken of the average citizen. The caller's description of the vehicle as well as its location matched the officer's observation.

Most importantly to this analysis, the caller gave his name to the police dispatcher, and remained on the telephone the entire time, at the very location of the incident. He identified himself to the officer as soon as feasible. Unlike an anonymous informant, this caller did not hang up and disappear. He was not anonymous in the sense of being ephemeral; he was located, named, and identified. He exposed himself to police scrutiny and risk of prosecution had the information been contrived; we can hardly presume citizens would do so unless their information was well founded. This warrants the logical conclusion the information was unlikely to be contrived. This report was consequently ingrained with a high degree of reliability, which did not necessitate an inordinate amount of corroboration to be credible. Un-

der these circumstances, and upon Officer Flanagan's seeing the described vehicle in the described location, we find the totality of information justified the brief investigative stop.

Although appellant contends additional police corroboration was necessary before he was stopped, we point to our decision in *Commonwealth v. Janiak*, 368 Pa.Super. 626, 534 A.2d 833 (1987). As here, our Court in *Janiak* was faced with the sole issue of whether the police could make an investigative stop of a car when they learned via police radio of a report by a private citizen that an individual was driving while under the influence near their position. Both officers stated the sole reasons for the stop were the report an intoxicated individual was operating the vehicle, and their belief under all of the circumstances the vehicle could only be the one in question. We held an "intermediate response" permits the police in the early stages of their investigative work to rely on radio information to make a stop of individuals suspected of criminal activity. *Id.*, at 630, 534 A.2d at 835 (*citing Commonwealth v. Benson*, 239 Pa.Super. 100, 107, 361 A.2d 695, 698 (1976), *aff'd per curiam*, 482 Pa. 1, 393 A.2d 348 (1978)). Further, we found the police officers, armed with this information, acted with reasonable suspicion and possessed specific and articulable facts which warranted the stop of the suspect vehicle. *Janiak*, at 631, 534 A.2d at 835.

Again, we are not faced with the breed of investigative stops made on the basis of an anonymous tip that could be nothing more than a prank call or the informant's unparticularized hunch. *Compare Commonwealth v. Jackson, supra* (anonymous tip without sufficient additional police corroboration does not amount to reasonable suspicion); *Commonwealth v. Knotts, supra* (same). To the contrary, because of the citizen's voluntary and concerned efforts detailed above, there was no reason to believe the caller's report was a falsehood designed to harass the driver for unrelated reasons; there was every reason to believe the contrary. As such, we find the

2. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

trial court properly refused to suppress the evidence seized pursuant to the stop.

Judgment of sentence affirmed.