**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Colleen WOOD, Appellant.**

Superior Court of Pennsylvania.

Argued April 8, 2003.
Filed Sept. 23, 2003.

Richard T. Brown, Philadelphia, for appellant.

Peter Carr, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: JOHNSON, FORD ELLIOTT, JOYCE, STEVENS, ORIE MELVIN, LALLY–GREEN, BENDER, BOWES, and GRACI, JJ.

JOHNSON, J.

¶ 1 Colleen Wood appeals the judgment of sentence imposed following her conviction of underage drinking. Ms. Wood contends that police stopped her illegally, without reasonable suspicion that she was engaged in criminal activity. The District Attorney for Philadelphia County asks this Court to conclude that it was reasonable for a Pennsylvania State Trooper, assigned as a liquor enforcement officer, to suspect that a seventeen-year old sitting in a bar was engaged in criminal activity where the only observation put forth by the Commonwealth to support such suspicion was that, from the arresting officer's experience, the minor "looked to be under the age of 21." For an investigative detention to comport with constitutional minimums, the law requires that the suspected criminal activity must be linked with the officer's observation of suspicious or irregular behavior of the particular individual involved. Here, the enforcement officers possessed absolutely no evidence, nor had they observed any culpable conduct involving Colleen Wood, prior to her alleged inculpatory declaration overheard by one of the officers. We believe that the detention of Ms. Wood was not justified by reasonable suspicion and that, accordingly, her alleged confession of underage drinking is not admissible at trial. Accordingly, we vacate the judgment of sentence, reverse the conviction and remand.

¶ 2 Ms. Wood presents this matter framing the statement of the question as follows:

Where it is not a crime for minors to be present in a bar and where no law requires persons inside a bar to have or show identification, do the federal and state constitutions require that the police have probable cause to believe that a person has committed a crime before arresting her for underage drinking, or can they conduct mass arrests first and then release those who can prove they are not violating the law?

Brief for Appellant at 2. While the statement as phrased might reasonably be seen by some as hyperbolic, it captures the issue this Court must resolve on this appeal: when viewing all of the surrounding circumstances, did the liquor enforcement officers have reasonable suspicion that Ms. Wood was engaged in criminal activity prior to subjecting her to the investigative detention that gave rise to her confession? We conclude that the officers did not possess reasonable suspicion that criminal activity by Ms. Wood was afoot.

¶ 3 Our Supreme Court has recently re-stated the standard by which we review a trial court order denying a motion to suppress:

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 842 (2003) (citations omitted). "When ruling on suppression motions, the suppression court is required to make findings of fact and conclusions of law as to whether evidence was obtained in violation of the defendant's constitutional rights." *Commonwealth v. Haynes*, 395 Pa.Super. 322, 577 A.2d 564, 570 (1990); *see* Pa. R.Crim.P. 581(I). Here, the suppression court did not make findings of fact on the record at the time of the hearing, although it did discuss the suppression issue in its opinion filed 11/5/01 pursuant to Pa.R.A.P. 1925(b). Because the only witness at the suppression hearing was Liquor Enforcement Officer Cynthia A. Taylor, we will consult the record directly to ascertain the facts surrounding Ms. Wood's detention and subsequent arrest. *See Haynes*, 577 A.2d at 570.

¶ 4 The Suppression Hearing Transcript (S.H.T.), 6/20/01, establishes the following facts. Pennsylvania State Trooper Taylor was assigned as a liquor enforcement officer and had been in that assignment for approximately a year and a half at the time of the incident here under review. S.H.T. at 4–5, R.R. 7a–8a. She had been with the Philadelphia enforcement unit for six months. *Id.* at 5, R.R. 8a. On February 27, 2001, Trooper Taylor, along with other officers, was working an assigned detail for the Mardi Gras celebration on South Street in Philadelphia. *Id.* at 6, R.R. 9a. The officers were on South Street as a result of their sergeant having received reports from the Philadelphia Police Department Vice Unit that "there was a good chance [the officers] would be finding a lot of underage drinking because it's a well-known party on South Street during Mardi Gras." *Id.*

¶ 5 At the suppression hearing, when the assistant district attorney questioned Trooper Taylor as to what the officers would look for while on patrol, the transcript includes this exchange:

Q. [ADA Joseph Doyle]: And tell us what you looked for?

A. [Trooper Taylor]: Usually [,] what we do is just go in in undercover status in street clothes, walk around and we're assigned to go into bars, take a look around, *see if we see anyone youthful appearing drinking beer or alcoholic beverages.* If we do, then we radio to the entire detail to come down and do a routine inspection of the premises.

Q. What happens if you think you go into a bar and you see someone youthful in appearance, do you mean under the age of 21?

A. Yes.

Q. And why is that?

A. Because it is illegal in the city of Pennsylvania [sic] to be drinking alcoholic beverages under the age of 21.

S.H.T., 6/20/01, at 6–7, R.R. 9a–10a (emphasis added).

¶ 6 Along with several other officers from the State Liquor Control Department, Trooper Taylor entered the "Name That Bar" on South Street. *Id.* at 8, R.R. 11a. Trooper Taylor testified that, from the officers' "experience," and based solely on whether a bar patron "looked to be under the age of 21," the officers would ask the bar patron for identification, a process known as carding. *Id.* at 9, R.R. 12a. When the officers have found "four, five, six" underage patrons, they separate all the patrons under 21 in a separate area of the bar. *Id.* at 10, R.R. 13a. Any patron over the age of 21 is ordered to leave the bar. Trooper Taylor acknowledged that, on this occasion, patrons over 21 were "free to leave" the bar. *Id.* The conclusion is inescapable that persons in the bar who were carded and could not prove they were over 21 were not "free to leave." As to the sequence by which the

officers proceeded with their investigation, Trooper Taylor testified that first, the officers would determine age, and then, and only then, were the officers "going to determine whether or not they had been drinking alcohol." *Id.*

¶ 7 On cross-examination, Trooper Taylor again confirmed that it was only after the "over 21's" had been separated from the "under 21's" that the officers proceeded to determine whether or not the "under 21's" had been drinking. *Id.* at 15, R.R. 18a. During the raid, either state or city police officers blocked the doorway and all exits until identification could be established. *Id.* at 13–14, R.R. 16a–17a. The identity of the officers blocking egress was clear to all in the bar. *Id.* at 14, R.R. 17a. Taylor testified that any patron "youthful in appearance" would have been prevented from leaving, even if the patron expressed a desire to leave the bar. *Id.*

¶ 8 After the officers identified Ms. Wood as being seventeen years of age, and only after she was segregated along with the other patrons who were "youthful in appearance," Trooper Taylor overheard Ms. Wood declare that "she was drinking not in that bar but ... she had been drinking that evening." *Id.* at 11, R.R. 14a. It was based upon this declaration alone that Ms. Wood was "set aside" to "get in line and be cited for [18 Pa.C.S. § ] 6308 [underage drinking]." *Id.* at 12, R.R. 15a. Officer Manning, a Philadelphia police officer who did not testify at the suppression hearing, wrote the Section 6308 citation underlying Ms. Wood's prosecution and conviction. *Id.*

¶ 9 Trooper Taylor, the only Commonwealth witness, offered no testimony that she or anybody else observed Ms. Wood purchasing, attempting to purchase, consuming or possessing any alcoholic beverages in the "Name That Bar" or anywhere else in Philadelphia. In fact, the suppres-

sion hearing transcript is devoid of *any* testimony that *any officer* had observed *anybody* who may have "looked to be under the age of 21" purchasing, consuming or possessing any alcoholic beverages prior to the segregation of those patrons thought to be minors. The officers segregated Ms. Wood and others such that she reasonably could understand she was not free to leave. Ms. Wood's confession of prior consumption of alcohol arose only after she had been detained for investigation, without any observed suspicious or criminal conduct on her part. Ms. Wood's detention was based solely on her appearance. The summary citation issued to Ms. Wood was based *solely* on Ms. Wood's admission, after being detained, that she had consumed alcohol earlier in the evening at a location away from "Name That Bar." We conclude that Ms. Wood's statement was acquired while she was unlawfully detained. Her admission, therefore, is inadmissible.

¶ 10 On this appeal, this Court need not decide whether the police practice of detaining *en masse* all those in a bar who "appear to be under twenty-one years of age" regardless of their individualized conduct, comports with the Fourth Amendment or Article I, Section 8 of the Pennsylvania Constitution. We need here consider only whether the attachment, arrest and conviction of Ms. Wood meets constitutional requirements. We believe that the troopers' lack of reasonable suspicion is sufficient to mandate reversal of this conviction.

¶ 11 The Pennsylvania Constitution provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as

nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. I, § 8. Similarly, the Fourth Amendment to the Constitution of the United States provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Thus, under both federal and state provisions, people are to be secure in their persons against unreasonable searches and seizures. We now examine whether Ms. Wood was detained unreasonably, thereby tainting any evidence seized as a result of that detention, including Ms. Wood's admission that she previously had consumed alcohol at a different location that evening.

¶ 12 It is well established that contacts between the police and the citizenry fall within three general categories: mere encounter, investigative detention and custodial detention or arrest. *See Commonwealth v. Strickler*, 563 Pa. 47, 757 A.2d 884, 889 (2000). Our Supreme Court has defined these interactions as follows:

The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. McClease*, 750 A.2d 320, 324 (Pa.Super.2000) (citations omitted) (quoting *Commonwealth v. Ellis*, 541 Pa. 285, 662 A.2d 1043, 1047–48 (1995)).

¶ 13 Pennsylvania courts recognize that under limited circumstances police are justified in investigating a situation, so long as the police officers reasonably believe that criminal activity is afoot. *See Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378, 1383 (1992). In order to demonstrate a reasonable suspicion, the police officer must be able to point to "specific, articulable facts and reasonable inferences drawn from those facts in the light of the officer's experience." *Commonwealth v. Jackson*, 548 Pa. 484, 698 A.2d 571, 573 (1997).

¶ 14 In determining whether a mere encounter has risen to the level of an investigative detention, the primary inquiry must be whether a seizure of the person has occurred. *See Commonwealth v. Mendenhall*, 552 Pa. 484, 715 A.2d 1117, 1120 (1998). Our Supreme Court has held that "[t]o maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion...." *Strickler*, 757 A.2d at 889. Within this context, it is axiomatic that our courts discern whether a person has been seized by determining "whether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave." *Commonwealth v. Smith*, 732 A.2d 1226, 1232 (Pa.Super.1999).

¶ 15 In the case before us, Trooper Taylor admitted that police conducted the bar raid first by carding those who appeared to be younger than 21 years of age, and then detained those who in fact were

younger than 21 in a designated section of the bar, regardless of whether they had been observed consuming alcohol. Although the initial action taken by police in carding Ms. Wood among other youthful patrons arguably could have been characterized as a "mere encounter," there is no question that after Ms. Wood was carded, the mere encounter rose to the level of an investigative detention, for by Trooper Taylor's own admission, all persons in the bar determined by police to be under 21 years of age, whether consuming alcohol or not, were detained in a designated section of the bar while those who were at least 21 years old were free to leave.

¶ 16 It was then that in order to continue to detain Ms. Wood, police needed to have formed a reasonable, articulable suspicion that she was engaged in, or was about to engage in, criminal activity. Though it is against the laws of this Commonwealth to consume alcohol while under the age of 21, there is no statute making it a crime for persons under 21 simply to be present in a bar on one isolated occasion. It is undisputed that Ms. Wood was not observed to be consuming alcohol prior to being carded and then detained by police. The only "evidence" that the officers possessed that could have supported a reasonable suspicion of criminal activity was the second-hand report from the Philadelphia Police Department Vice Unit that there was a "good chance" that the officers would be finding "a lot of underage drinking" because of a "well-known party on South Street during Mardi Gras." S.H.T., 6/20/01, at 6, R.R. 9a. There is absolutely no evidence on the record that any underage patron was observed drinking or purchasing alcohol at any time prior to the segregation of the patrons. Only after the officers had detained Ms. Wood, and at a point where she clearly was not free to leave, did Ms. Wood admit to having consumed alcohol earlier in the evening before

entering "Name That Bar." Thus, her incriminating statement was obtained illegally. See Commonwealth v. Gibson, 536 Pa. 123, 638 A.2d 203, 207 (1994) (holding convictions for summary offense of underage drinking reversed where police lacked probable cause to enter apartment for search that yielded evidence of minors consuming alcohol).

¶ 17 The Commonwealth relies on our decision in Commonwealth v. Elliott, 376 Pa.Super. 536, 546 A.2d 654 (1988) to support its contention that the officers' suspicion that criminal activity was afoot was reasonable, in spite of the fact that police did not see Ms. Wood or anyone else consuming alcohol and in spite of the additional fact that presence within a bar of persons under age 21 is not illegal. Brief for Appellant at 9. In Elliott, this Court considered whether a police officer who has lawfully stopped a vehicle for a suspected Motor Vehicle Code violation may, consistent with the Fourth Amendment, order a passenger to exit the vehicle when the passenger is suspected of committing a crime. See id., 546 A.2d at 657. This Court concluded that the arresting trooper had reasonable suspicion that criminal activity was afoot, and that the trooper could reasonably conclude that the passenger was engaging in underage drinking. See id. at 660. In so concluding, this Court examined a fact situation where the investigating trooper observed a bag of ice with beer in it located behind the passenger's seat, as well as a strong odor of alcohol emanating from the vehicle and several empty beer bottles strewn throughout the interior of the vehicle. See id. at 656, 660. When the underage passenger opened the car door and exited the vehicle, "an open bottle of beer, which was apparently wedged between the door and [the passenger's] leg, spilled out onto the road." Id. at 656.

¶ 18 The trooper's observation of the bag of ice with beer in it located behind the passenger's seat, and the strong odor of alcohol coming from the vehicle, coupled with the trooper's suspicion that the passenger was under the legal age for consuming alcoholic beverages, supported a reasonable suspicion that criminal activity was afoot and that the passenger was violating the law by engaging in underage drinking. However, that is not the case here, where the only evidence to support a reasonable suspicion that Ms. Wood was engaging in criminal activity was the fact that she may have appeared to be under the age of 21, she was sitting in a bar, and the Philadelphia police had told the troopers' supervisor that there was a "good chance" that the troopers would find "a lot of underage drinking" on South Street during Mardi Gras.

¶ 19 In this case, the officers did not find any underage drinking in the "Name That Bar" or, if they did, the Commonwealth did not elect to present such evidence at the suppression hearing. Trooper Taylor testified that the troopers' standard procedure is to "go into bars, take a look around, [and] see if we see anyone youthful appearing drinking beer or alcoholic beverages." S.H.T., 6/20/01, at 7, R.R. 10a. It is only after the troopers observe a youthful-appearing patron drinking alcoholic beverages that they then "radio to the entire detail to come down and do a routine inspection of the premises." *Id.* That policy was not followed here. Trooper Taylor testified that "initially what we wanted to do is determine age. And then we were going to determine whether or not they had been drinking alcohol." *Id.* at 19, R.R. 13a.

¶ 20 Ms. Wood poses the question as whether the police can "conduct mass arrests first and then release those who can prove they are not violating the law?"

Brief for Appellant at 2. We agree with the Commonwealth that we are not here reviewing the circumstances of Ms. Wood's arrest. The Commonwealth concedes that the police subjected Ms. Wood to an investigatory detention when they separated her from other bar patrons. Substituted Brief for Petitioner/Appellee at 5–6. The Commonwealth contends, and we agree, that the only issue is whether the police had reasonable suspicion to justify that investigatory detention.

¶ 21 The courts of this Commonwealth have *never* determined that the conduct of a group will support a finding of reasonable suspicion of an individual, barring some particularized conduct by that individual. The surrounding circumstances in *Elliott,* with beer in the seat behind the passenger and empty beer bottles strewn throughout the vehicle, coupled with a strong odor of alcohol throughout the car in which only two people were present, supported the officer's suspicion that the passenger had indeed engaged in underage drinking. This Court has most recently again declared that:

> To establish grounds for "reasonable suspicion" sufficient to justify an investigative detention, the officer must articulate **specific observations** which, in conjunction with reasonable inference derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot **and that the person he stopped was involved in that activity.** *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673, 676 (1999). Mere hunches on the part of the officer are insufficient to meet this burden; however, ". . . a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Id.*

*Commonwealth v. Bennett,* 827 A.2d 469, 477 (Pa.Super.2003) (emphasis added).

"Our courts have mandated that law enforcement officers, prior to subjecting a citizen to investigatory detention, must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity." *Commonwealth v. Beasley*, 761 A.2d 621, 625 (Pa.Super.2000). "[E]ven where the circumstances surrounding an individual's conduct suggest ongoing illegality, the individual may not be detained unless his or her personal conduct substantiates involvement in that activity." *Id.* at 626. Our Supreme Court has rejected an attempt by the Commonwealth to justify the detention and subsequent arrest of three women sitting on the stoop in front of a multi-family apartment building where a drug raid was in progress, finding a complete absence of a link between the women and the apartment where drugs were allegedly being distributed. *See Commonwealth v. Rodriquez*, 532 Pa. 62, 614 A.2d 1378 (1992).

¶ 22 Case law requires a particularized connection between the alleged criminal activity and the conduct of the person sought to be detained. *See Bennett, Beasley*, and *Rodriquez.* Here, the alleged criminal activity is underage drinking. Ms. Wood's conduct, from the record, was nothing more than being present in the "Name That Bar" at a time when the officers determined to "take a look around" to see if they could observe "anyone youthful appearing drinking beer or alcoholic beverages." They did not observe Ms. Wood drinking alcoholic beverages. Nor did they observe her possessing, purchasing, or attempting to purchase alcoholic beverages. The individualized observation of suspicious conduct of the particular person detained, in this case, Ms. Wood, is totally lacking. The suspicion is, therefore, unreasonable and the detention resulting therefrom was unlawful. Accordingly, the evidence taken during that illegal detention must be sup-

pressed. *See Beasley*, 761 A.2d at 626-28; *see also Rodriquez*, 614 A.2d at 1381-84.

¶ 23 Even if it were determined that the troopers possessed reasonable suspicion that Ms. Wood was, herself, engaged in criminal activity, we would remain convinced that this conviction cannot stand. The troopers detained her without any evidence linking her to underage drinking. It was only Ms. Wood's admission, made while detained, that supports her conviction. The trial court, sitting non-jury, declared: "After hearing the evidence presented to me[,] the court finds you guilty of underage drinking." S.H.T., 6/20/01, at 21, R.R. 24a. A careful examination of the record establishes that the only evidence presented to the court concerning Ms. Wood's conduct was her admission, made while under detention, that she had been drinking earlier that evening someplace away from "Name That Bar."

¶ 24 In order to preserve an issue for review, a litigant must make timely and specific objection during trial and raise the issue in post-trial motions. *See Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116, 1124 (2000). Issues not preserved for appellate review should not be considered by an appellate court even though the error involves a basic or fundamental error. *See Reilly v. Southeastern Pennsylvania Transp. Auth.*, 507 Pa. 204, 489 A.2d 1291, 1296 (1985); *see also Trach v. Fellin*, 817 A.2d 1102, 1107-08, 1119 (Pa.Super.2003) (*en banc*) (recognizing that Superior Court, as error-correcting court, may not purport to reverse an order where only basis for finding error is claim responsible party never gave trial court opportunity to consider).

¶ 25 Nevertheless, we feel compelled to observe that, in any criminal case, a conviction may not be based upon the extra-judicial confession of the accused

unless it is corroborated by independent evidence establishing the *corpus delicti.* *See Commonwealth v. Ahlborn,* 441 Pa.Super. 296, 657 A.2d 518, 520–21 (1995) (citing *Commonwealth v. Ware,* 459 Pa. 334, 329 A.2d 258, 274 (1974)). The law of Pennsylvania requires that the Commonwealth prove the existence of the *corpus delicti* beyond a reasonable doubt, that is, prove that Ms. Wood was, in fact, drinking, *before* the fact-finder may consider the defendant's confession. *See Commonwealth v. Tallon,* 478 Pa. 468, 387 A.2d 77, 81 (1978); *see also Ahlborn,* 657 A.2d at 521. Without the confession, there is nothing on this record to permit the fact-finder to conclude that a crime had been committed. It appears undisputed that no corroboration by independent evidence exists to establish the alleged criminal conduct of underage drinking. If this issue were properly before us, the judgment of sentence would require reversal on this ground alone.

¶ 26 We conclude that the troopers lacked reasonable suspicion to detain Ms. Wood for investigation when they proceeded on nothing more than her appearance as appearing to be under twenty-one years of age. Without the requisite reasonable suspicion, the admission is rendered inadmissible at any trial. Moreover, were the issue before us, we would find that the use of her admission offends the *corpus delicti* rule. Accordingly, we conclude that the judgment of sentence cannot stand.

¶ 27 Judgment of sentence **VACATED.** Conviction **REVERSED.** Case **REMANDED** for further proceedings not inconsistent with this Opinion.

¶ 28 Judges Ford Elliott, Joyce, Lally-Green, Bender and Bowes, joined the Opinion by Johnson, J.

¶ 29 STEVENS, J. files a Dissenting Opinion in which Judges ORIE MELVIN and GRACI, join.

STEVENS, J., Dissenting.

¶ 1 I conclude that the Commonwealth proved that the officers in question had the necessary reasonable suspicion to conduct an investigatory detention of Appellant, and, therefore, I would affirm the judgment of sentence. As such, I respectfully dissent.

¶ 2 My review of the record reveals that on February 27, 2001, Mardi Gras festivities were taking place on South Street in Philadelphia, Pennsylvania. Reports from the Philadelphia Police Department suggested that significant underage drinking was likely to occur in that area during these festivities. Accordingly, several Pennsylvania liquor control officers were assigned to a detail to identify patrons in South Street bars who appeared to be under the age of twenty-one and who were drinking alcoholic beverages.

¶ 3 The Pennsylvania liquor control officers specifically targeted a bar called "Name That Bar" on South Street, and officers wearing street clothes went thereto. Upon entering the bar, the officers approached patrons who looked under twenty-one years old and asked them to produce identification. Those patrons identified as being under the age of twenty-one were separated from the other patrons. Appellant, who was in the bar at the time, revealed that she was seventeen years old, and she was detained along with the other patrons. While standing near Appellant, Pennsylvania Liquor Control Officer Cynthia Taylor saw that Appellant was upset and Appellant indicated that she had not been drinking alcohol while in "Name That Bar," although she had been drinking alcohol earlier in the evening. Based upon Appellant's admission, she was charged with underage drinking, 18 Pa. C.S.A. § 6308, and she subsequently filed a motion to suppress.

¶ 4 I conclude that the lower court properly denied Appellant's motion to suppress. Following the dictates of the United States Supreme Court in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Pennsylvania Courts have recognized that under limited circumstances, police officers are justified in investigating a situation and may conduct brief, investigatory detentions of individuals, so long as the police officers reasonably believe that criminal activity may be afoot. *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673 (1999); *In re C.C.J.,* 799 A.2d 116 (Pa.Super.2002). In determining whether a reasonable suspicion exists, we must look to the totality of the circumstances. *Commonwealth v. Riley,* 715 A.2d 1131, 1135 (Pa.Super.1998). A police officer must demonstrate reasonable suspicion by pointing to articulable facts and reasonable inferences drawn from those facts in light of the officer's experience. *Commonwealth v. Jackson,* 548 Pa. 484, 698 A.2d 571 (1997). A law enforcement officer who "lacks the precise level of information necessary for probable cause to arrest" but possesses reasonable suspicion of criminal activity, is not required "to simply shrug his shoulders and allow . . . a criminal to escape." *Commonwealth v. Lagamba,* 418 Pa.Super. 1, 613 A.2d 1, 5 (1992). "Merely because a suspect's activity may be consistent with innocent behavior does not alone make detention and limited investigation illegal." *In re C.C.J.,* 799 A.2d 116, 121 (Pa.Super.2002).

¶ 5 Under the totality of the circumstances in this case, I conclude that the officers had a reasonable, articulable suspicion to believe that Appellant was engaged in criminal activity when she was briefly stopped at "Name That Bar." Here, the police observed Appellant, who appeared to be under the legal drinking age, in an establishment whose primary purpose is to sell alcohol, during a time when, based on the officers' experience, a substantial amount of underage drinking occurred. I conclude that the circumstances justifying the investigative detention in this case are stronger than those in other cases in which this Court has found sufficient reasonable suspicion to necessitate an investigative detention. For example, in *In re C.C.J.,* 799 A.2d 116 (Pa.Super.2002), a panel of this Court concluded that officers had a reasonable suspicion to justify a stop when they observed a juvenile, who appeared to be of a school age youth, on the public street during a time when school was in session. We specifically concluded that the apparent age of the appellant, together with the time of day, was sufficient for the police to suspect that the appellant was a truant. While it was not illegal for the appellant to be present on a public street, in light of other circumstances, such as the time of day and fact the appellant was a minor, the police were justified in investigating the matter further.

¶ 6 As in *In re C.C.J.,* the apparent age of Appellant, along with the place, time, and circumstances surrounding her presence in "Name That Bar" were sufficient for experienced officers to briefly detain Appellant for investigative purposes. In fact, I conclude that it would have been a dereliction of their duty for Pennsylvania liquor control officers not to further investigate for underage drinking in circumstances such as those presented here.

¶ 7 Finally, I find the Majority's comments regarding the *corpus delicti* rule unnecessary and inconsistent with this Court's scope of review. The Majority includes comments on an issue which was not properly preserved in the court below. My review of the record reveals that Appellant failed to object under the *corpus delicti* rule, and, therefore, any challenge thereto has not been preserved. Pa. R.A.P. 302.

¶ 8 Judges ORIE MELVIN and GRACI joined the Dissenting Opinion by STEVENS, J.