COMMONWEALTH of Pennsylvania,
Appellant,

v.

Douglas MISTLER, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Joanna Oliver, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Patrick Luddy, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Stacey Gillespie, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Kali Warren, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Paul Mudd, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Hillary Kozak, Appellee.

Commonwealth of Pennsylvania,
Appellant,

v.

Elise Sterbinsky, Appellee.

Superior Court of Pennsylvania.

Submitted Oct. 4, 2004.
Filed Jan. 27, 2005.
Reargument Denied March 29, 2005.

Nicholas J. Casenta, Jr., Asst. District
Atty., West Chester, for Com., appellant.

Dawson R. Muth, West Chester, for
Mistler, Oliver, Gillespie, Warren, Kozak,
Sterbinsky, appellees.

Phillip A. Simon, West Chester, for
Mudd, appellee.

Patrick Luddy, appellee, Pro Se.

BEFORE: DEL SOLE, P.J.,
PANELLA and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 The Commonwealth appeals from the April 28, 2004 Order granting appellees' motion to suppress all evidence obtained as a result of their detention by undercover Pennsylvania State Liquor Control Enforcement officers (hereinafter LCE), at a college fraternity house party. In the interest of judicial economy, the factual and procedural backgrounds of this case are set forth below, as provided by the suppression court in its Opinion.

On April 3, 2003, following an undercover operation, Pennsylvania State Liquor Control Enforcement officers (hereinafter "LCE") and the West Chester Police (hereinafter "WCP") issued under-age drinking citations to a group of students who were attending a party at Sigma Pi fraternity. On this night, Sigma Pi fraternity, located at 701 South Walnut Street in West Chester, opened their fraternity house to the public for a party by selling tickets for admission. When the undercover LCE officers entered the fraternity house, by presenting their tickets at the door, they immediately made their way to the basement. In the basement LCE officers observed a makeshift bar where people who appeared to be students were being served and were consuming alcoholic beverages. From their observations, the LCE officers generally gathered that many of the students, who seemed youthful in appearance, were under the age of 21.

As the crowd in the basement began to multiply, the LCE officers believed it was necessary, for safety purposes, to call in the detail of the WCP, who were uniformed police officers. When the WCP arrived, the LCE officers stopped the party and began to "card" each student by checking their drivers' licenses for identification. Based on their ages, LCE officers divided the students into two groups: those that were over the age of 21, and those that were under the age of 21. Those who were over the age of 21 were told that they were free to leave, and the under 21s were further detained. Upon detention of the students under the age of 21, the WCP and the LCE officers administered PBTs, [preliminary breath tests] and began to question students concerning whether or not they had been drinking. Based on the PBT information, students' admissions that they had been drinking, and LCE officers' observations, LCE officers issued under-age drinking citations to fifty-six (56) students. Only eight (8) of the Defendants are party to this appeal.

A hearing was held July 11, 2003, before District Justice Mark A. Bruno, and all the above Defendants were found guilty of under-age drinking. Defendants then filed summary appeals to the Chester County Court of Common Pleas. On September 16, 2003, I granted the Commonwealth's Motion to consolidate the cases for a suppression hearing. That hearing was held on October 22, 2003. As a result of the evidence produced at that hearing I was not satisfied that the Commonwealth had demonstrated the requisite "reasonable suspicion" as that term was used in *Commonwealth v. Wood,* 2003 Pa. Super. 338 [358], 833 A.2d 740 (2003) [ (*en banc* ), *affirmed,* [— Pa. ——, 862 A.2d 589,] 2004 Pa.LEXIS 3036 (Pa. Dec. 2, 2004) ]. I wrote an Opinion ruling on those suppression issues which applied to the Defendants generally, and I reserved ruling on issues which applied solely to any particular Defendant. A second hearing was held on April 7, 2004 to allow the Commonwealth to demonstrate "reasonable suspicion as regards the particular individuals who were arrested." On April 28, 2004, I issued an

Order granting Defendants' Omnibus Pre–Trial Motion suppressing all evidence including laboratory results, field test results, and all other evidence obtained as a result of the investigative detention in question. On April 29, 2004, the Commonwealth filed a Notice of Appeal, and on May 10, 2004, the Commonwealth submitted their Concise Statement of Matters Complained of on Appeal.

Trial Court Opinion, Wood, S.J., 5/28/04, 1–3.

¶ 2 The Commonwealth's argument on appeal centers on *Commonwealth v. Wood,* 833 A.2d 740 (Pa.Super.2003) (*en banc* ), *affirmed,* —— Pa. ——, 862 A.2d 589 (2004). The Commonwealth argues the case is inapplicable to the facts before us or, in the alternative, it is distinguishable on these bases: (1) *Wood* "does not prohibit the type of investigation and issuance of citations that occurred here"; and (2) detention did not occur "as soon as backup officers entered the fraternity and asked those attendees who were of age to make themselves know[n] to officers." Appellant's brief at 6.

¶ 3 In *Wood,* LCEs were on assignment during a Mardi Gras celebration in the South Street area of Philadelphia, checking for underage drinkers. They entered a bar and began "carding" those individuals who appeared to be under the legal drinking age of 21. At the suppression hearing conducted in connection with *Wood,* an arresting officer explained their actions that evening, and this Court summarized that testimony.

[An LCE officer] testified that, from the officers' "experience," and based solely on whether a bar patron "looked to be under the age of 21," the officers would ask the bar patron for identification, a process known as carding. When the officers have found "four, five, six" un-

derage patrons, they separate all the patrons under 21 in a separate area of the bar. Any patron over the age of 21 is ordered to leave the bar. [Arresting officer] acknowledged that, on this occasion, patrons over 21 were "free to leave" the bar. The conclusion is inescapable that persons in the bar who were carded and could not prove they were over 21 were not "free to leave." As to the sequence by which the officers proceeded with their investigation, [arresting officer] testified that first, the officers would determine age, and then, and only then, were the officers "going to determine whether or not they had been drinking alcohol."

On cross-examination, [arresting officer] again confirmed that it was only after the "over 21's" had been separated from the "under 21's" that the officers proceeded to determine whether or not the "under 21's" had been drinking. During the raid, either state or city police officers blocked the doorway and all exits until identification could be established. The identity of the officers blocking egress was clear to all in the bar. [Arresting officer] testified that any patron "youthful in appearance" would have been prevented from leaving, even if the patron expressed a desire to leave the bar.

*Wood, supra,* at 743–744 (citations omitted). Then 17–year–old appellant Wood was one of those individuals "youthful in appearance" who was observed sitting at the bar; she was segregated along with others who appeared to be under the age of 21. Wood was not seen consuming alcohol that evening. As she stood with others determined to be under age 21, however, an officer overheard her say that while she had not been drinking in that bar, she previously had a drink at another establishment. "It was based upon this declara-

tion alone that Wood was cited for underage drinking." *Id.* at 744. Wood was convicted, filed a summary appeal, and convicted once again. On appeal, however, this *en banc* Court concluded, "the troopers lacked reasonable suspicion to detain Ms. Wood for investigation when they proceeded on nothing more than her appearance as appearing to be under twenty-one years of age. Without the requisite reasonable suspicion, the admission [of drinking elsewhere] is rendered inadmissible at any trial." *Id.* at 749.

¶ 4 In finding *Wood* applicable to the facts before us, the suppression court herein reasoned

> In *Wood,* the Court found that the police officers did not have sufficient reasonable articulable suspicion to believe that that particular defendant was engaging in, or about to engage in, criminal activity. The Court's definition of reasonable articulable suspicion requires a "particularized connection" between the alleged criminal activity, and the conduct of the person sough to be detained. In Wood, the Court stressed that without individualized observations of specific conduct, there was no reasonable articulable suspicion on which to detain someone:
>
> > To establish grounds for "reasonable suspicion" sufficient to justify an investigative detention, the officer must articulate **specific observations** which, in conjunction with reasonable inference derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot **the person he stopped was involved in that and that activity.**

*Commonwealth v. Wood,* 833 A.2d at 747 (emphasis added), (citing *Commonwealth v. Cook,* 558 Pa. 50, 735 A.2d 673, 676 (1999)). In *Wood,* LCE officers did not actually observe the defendant

drinking, and the fact that she was sitting at a bar was not dispositive of whether she had been drinking. The Court recognized that while it was illegal for someone under the age of 21 to consume alcohol in a bar, it was not illegal for that person to be present in a bar. The Court concluded that the investigative detention was improper.

Suppression Court Opinion, Wood, J., 5/28/04, at 3–4.

¶ 5 We agree with the suppression court that the officers herein did not have the requisite reasonable suspicion to detain the appellees. The LCE officers went to the party suspecting there would be underage drinking. The officers observed those they believed to be "youthful in appearance" present at the college party held in a dimly lit basement. They called the local police force for back-up only due to the size of the gathering; there was no testimony those in attendance were unruly or the gathering was out of hand. As to the appellees, there was no "particularized" observation by the LCE officers that they had been drinking. To the contrary, the LCE officers here, as the officers in *Wood,* summarily divided those in attendance at the party into two groups, those who appeared youthful and those who did not. At that point, once the local police arrived, only those who (1) provided proof they were at least 21 years of age, or (2) provided a "zero" preliminary breath test, were allowed to leave. When given the opportunity at a second suppression hearing to present particularized evidence and identify the defendants, the Commonwealth failed to do so. The appellees' "crimes", like the appellant's in *Wood,* were only appearing youthful and being present where alcohol was being served. While the LCE officers may have observed some individuals drinking beer, the LCE officers did not provide evidence that the appellees

were drinking at the party, nor did they identify the appellees with any certainty, or specify for what reason the appellees were cited. As the suppression court reasoned,

> when the [local police] arrived at the fraternity house, the LCE officers stopped the party and began to "card" each student by checking their drivers' licenses for identification. I would have considered it sufficient to prove identification if the Commonwealth had presented evidence at the April 7, 2004 hearing that each Defendant had been identified as one of those detained at the fraternity house on April 3, 2003 because he or she was under the age of 21. The Commonwealth argues that it would have been impossible to do so. I suggest that nothing would have been easier.
>
> . . .
>
> In this case, there was no evidence whatsoever presented at the April 7, 2004 hearing that the Defendants on the list were the same students who had been charged with under-age drinking on April 3, 2003. I would have been satisfied if some police officer or officers had testified that he, she, or they issued citations to the named defendants because that person had produced a drivers' license or other identification, and the officer used that identifying information to prepare the citation that was issued. But as it was, the Commonwealth gave me nothing to show that the Defendants named in the caption to this case were the people who were present in the fraternity house that evening. Thus, the Commonwealth failed to prove "that the person . . . stopped was involved in that activity," as required by *Wood.*

Suppression Court Opinion, 5/28/04 at 5–6. Without individualized observation of specific conduct, i.e. drinking alcohol or demonstrating some indicia of intoxication, we agree with the suppression court that the LCE officers lacked reasonable suspicion to detain and cite the appellees. *See Wood.*

¶ 6 The Commonwealth, however, nevertheless argues in the alternative. Appellant first posits that *Wood* "does not prohibit the type of investigation and issuance of citations that occurred here." Appellant's brief at 21. Appellant's argument, however, is merely an attempt to argue with greater specificity the inapplicability of *Wood;* the Commonwealth argues (1) specific identification of the alleged culprits is a matter for trial; and (2) detaining a group of individuals to dispel suspicion is allowable. Secondly, the Commonwealth argues the suppression court erred by finding that the investigative detention began as soon as the local police officers arrived and asked for identification from those in attendance, but prior to the verification of their age or identity. Appellant's brief at 25. These facts, appellant argues, are contrary to those in *Wood* where a few bar patrons were carded before all patrons were segregated according to "youthful appearance," at which point detention began.

¶ 7 Given our resolution of the first issue, however, finding that the appellees herein were not identified as those who partook in the alleged underage drinking at the fraternity house, we need not address these remaining issues. Relying on *Wood,* we affirm the Order granting suppression of the evidence seized as a result of the investigative detention at the April 3, 2003 fraternity party.

¶ 8 Order affirmed.