J-A12015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                     :              PENNSYLVANIA
                     :

              v.             :
                     :
                     :

GLEN BENSON             :
                     :

          Appellant      :    No. 3971 EDA 2017

Appeal from the Judgment of Sentence October 24, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-SA-0001142-2015

BEFORE: BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:             **FILED AUGUST 15, 2018**

Glen Benson appeals *pro se* from the judgment of sentence imposed after he was convicted of the summary offense of disorderly conduct. We affirm.

The following summarizes the evidence offered at Appellant's May 17, 2016 *de novo* trial in the common pleas court after he was convicted by the magistrate. On August 21, 2015, Appellant purchased a loveseat slipcover and curtain tiebacks at a K-Mart in Delaware County. As his rewards card was not scanned to earn an additional discount, he sought to have the cashier re-ring the transaction. A supervisor of cashiers, Natasha Moore, testified that she advised Appellant that, because K-Mart was in liquidation and all sales were thus final, the transaction could not be cancelled and Appellant would instead have to call a toll-free number to obtain his rewards points. Ms. Moore indicated that Appellant became angry, called her names and cursed at her,

threatened to smack her, and approached her with his hand in a fist. The police were called, but arrived after Appellant had left the store. Ms. Moore did not file an incident report with K-Mart, and did not know whether anyone else had filed one.

Appellant, who at trial was represented by counsel, testified in his defense, indicating that it was Ms. Moore, not he, who became irate, initially screaming at the cashier when she requested the code from Ms. Moore to change the transaction. When Appellant posited to Ms. Moore that the sale could not be final because he had not yet signed to authorize the purchase, she turned her wrath towards him. Appellant contended that Ms. Moore was the aggressor, and verbally assaulted him until other K-Mart employees intervened to remove Ms. Moore from the scene. Appellant stated that he called K-Mart's corporate number and made a complaint about Ms. Moore.

Appellant also offered a character witness, Jennifer Stamm, who attends the church at which Appellant is minister. Ms. Stamm testified that Appellant has a reputation in the community as a peaceful, law-abiding, and loving person. Two additional character witnesses who were present were not called to testify in Appellant's defense, as his counsel determined that their evidence would be redundant.

Upon this evidence, the trial court convicted Appellant of disorderly conduct and sentenced him to pay a fine of $100. Appellant filed a motion for reconsideration. The trial court granted Appellant's motion, vacated the

judgment of sentence, and scheduled a reconsideration hearing for August 9, 2016. At the conclusion of the hearing, the trial court determined that no relief was due, but did not impose a new sentence. Appellant's appeal from that determination was quashed by this Court, and, upon remand, the trial court re-imposed the sentence of a fine of $100.

Appellant filed a notice of appeal that was docketed on November 30, 2017. However, the docket also reflects that the trial court entered an order three days prior, on November 27, 2017, requiring Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed his statement on December 22, 2017.

As an initial matter, we consider whether we have jurisdiction over this appeal, as Appellant's notice of appeal was not filed within thirty days of the imposition of his judgment of sentence on October 24, 2017. To have been timely, Appellant's notice of appeal had to have been filed by Monday, November 27, 2017.[1] Appellant's notice was dated November 20, 2017, and was received by the trial court no later than November 27, 2017, given the

---

[1] The thirtieth day fell on Thanksgiving, and the trial court was also closed the following day. *See* 1 Pa.C.S. § 1908 (providing that the calculation of time periods omits weekends and holidays when the last day of the period is a weekend or holiday). Accordingly, the following Monday was the last day on which Appellant could file a timely notice of appeal.

issuance that day of the Rule 1925(b) order. Based upon this record, we decline to find that Appellant's notice was untimely.[2]

We next must determine whether Appellant complied with Pa.R.A.P. 1925(b). His statement was neither filed within twenty-one days of the court's order nor was it a concise statement of errors. The trial court advocates waiver based upon the latter defect, noting that Appellant did not, as the Rule instructs, identify only the errors he intended to challenge on appeal, but instead filed a six-page document more akin to an appellate brief. Trial Court Opinion, 12/22/17, at 5. However, as the trial court was able to glean from the statement the issues Appellant presents to this Court, and addressed those issues in its opinion, we decline to find waiver on this basis.

Waiver also does not attach to Appellant's filing the statement on the twenty-second day following the docketing of the trial court's order directing him to file one within twenty-one days. The docket does not reflect when the order was served on Appellant, or even that it was served on him. **See** Pa.R.Crim.P. 114. Accordingly, the order was not properly entered, and waiver for failure to comply with it may not result. **See**, **e.g.**, **Commonwealth v. Davis**, 867 A.2d 585, 588 (Pa.Super. 2005) (*en banc*) (holding no waiver for failure to file concise statement where the clerk of

---

[2] Neither the trial court nor the Commonwealth contends that this appeal is untimely.

courts did not indicate that there even was service, let alone the date of service as required by Pa.R.Crim.P. 114).

We thus turn to the substance of Appellant's appeal. Appellant's brief is not a model of clarity, and is not in strict compliance with our appellate rules. However, we glean from his papers that he questions the evidentiary support for his verdict and disputes a number of the trial judge's evidentiary rulings. Appellant's brief at 7-18.

We begin with Appellant's sufficiency claim, for which our standard and scope of review are de novo and plenary, respectively. *Commonwealth v. Williams*, 176 A.3d 298, 305 (Pa.Super. 2017). A conviction is based upon sufficient evidence if "the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." *Id*. at 305-06. The Commonwealth may sustain its burden through wholly circumstantial evidence, and need not preclude all possibility of innocence. *Id*. at 306. "It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Id*. "Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id*.

Appellant was convicted of disorderly conduct. "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or

alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or threatening, or in violent or tumultuous behavior[.]" 18 Pa.C.S. § 5503(a)(1). "[W]hether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Fedorek*, 946 A.2d 93, 100 (Pa. 2008) (quoting *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999)) (emphasis omitted).

The Commonwealth can establish the specific intent element of the offense with "a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." *Commonwealth v. Troy*, 832 A.2d 1089, 1094 (Pa.Super. 2003) (internal quotations and citations omitted). Indeed, "when an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public arena, even when that conduct is directed at only **one other person**, the offender may be subject to conviction for disorderly conduct." *Fedorek*, *supra* at 100 (emphasis in original).

Appellant's challenge to his conviction focuses upon the Commonwealth's failure to produce evidence to corroborate Ms. Moore's testimony and the trial court's rejection of Appellant's testimony, which

described Ms. Moore as the aggressor. Appellant's brief at 16-17. These arguments have no support in the law or facts of this case.

First, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." ***Commonwealth v. Johnson***, 180 A.3d 474, 481 (Pa.Super. 2018). Moreover, "the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. DiStefano***, 782 A.2d 574, 582 (Pa.Super. 2001).

In the instant case, Ms. Moore testified to the following. In the K-Mart that was open to the public, Appellant called her names, cursed at her, approached her threateningly with a balled-up fist, and screamed in her face. N.T. Trial, 5/17/16, at 6. Appellant's threatening caused "all the guys in the store" to advance upon the scene "to protect [Ms. Moore] from him." ***Id***. at 7. This testimony alone is sufficient to sustain Appellant's conviction. ***See Fedorek***, ***supra*** at 100-01 (collecting cases in which the evidence was sufficient "where the underlying public acts involve, as in the instant case, the private melodramas of two or three people that also cause or create the risk of public disturbance").

It is axiomatic that "[t]he finder of fact . . . exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence." ***Commonwealth v. Sanchez***, 36 A.3d 24, 39

(Pa. 2011). Here, the trial court did not believe Appellant, and believed Ms. Moore. **See** N.T. Reconsideration, 8/9/16, at 9 ("[T]his case was really on credibility and I believe the lady from K-Mart and that's it."). We may not re-weigh the evidence and substitute our judgment for that of the fact-finder. **Commonwealth v. Chine**, 40 A.3d 1239, 1242 (Pa.Super. 2012). Accordingly, we shall not disturb Appellant's conviction upon his credibility-based arguments.

We next consider Appellant's evidentiary challenges, mindful of the following.

> [T]he admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

**Commonwealth v. Murphy**, 182 A.3d 1002, 1004–05 (Pa.Super. 2018) (quoting **Commonwealth v. Woodard**, 129 A.3d 480, 494 (Pa. 2015)).

Appellant takes issue with several of the trial court's evidentiary rulings. Appellant complains that his counsel was improperly restricted in his cross-examination of Ms. Moore, that the Commonwealth committed discovery violations, and that Appellant was erroneously precluded from introducing new evidence at the post-trial reconsideration hearing. Appellant's brief at 7-12, 16.

We first consider the issues concerning the cross-examination of Ms. Moore. Appellant contends that the trial court should have allowed her to be questioned about whether K-Mart had an incident report concerning the episode in question, and about her motives for creating a false story and fabricating her testimony. Appellant's argument is based upon his version of events: that Ms. Moore was in the wrong in verbally attacking Appellant, that her co-workers had to physically remove her from the scene, and that as a result, she was terminated from her position and needed to fabricate a "bogus story" to qualify for unemployment benefits. *Id*. at 7.

The trial court permitted counsel to cross-examine Ms. Moore as to her personal knowledge of the existence of an incident report. *See* Pa.R.E. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Ms. Moore testified, and the trial court found it credible, that she did not file an incident report, and she did not know whether any such report was created by someone else. N.T. Trial, 5/17/16, at 10, 11. Appellant's contentions that such a report must exist somewhere are based upon speculation. He does not indicate that he made any attempt to ascertain what K-Mart's policy is concerning the creation of incident reports, let alone that he was prepared to offer proof that the absence of a report supported a finding that the incident did not happen as Ms. Moore detailed. As such, we find no abuse of discretion in the trial court's rulings regarding an incident report.

Similarly, Appellant's arguments about the trial court's failure to allow him to question Ms. Moore about her motive to testify untruthfully finds no support in the record. The only indication that she faced discipline was Appellant's objected-to hearsay testimony that some unidentified person, with whom he spoke during a telephone call to K-Mart's corporate telephone number, told Appellant that she would be disciplined. N.T. Trial, 5/17/16, at 18, 21. Appellant never asked Ms. Moore if she was terminated from her employment as a result of the incident. Hence, the trial court did not wrongly interfere with Appellant's cross-examination regarding motive as to any loss of employment.

Conversely, the record reveals that Appellant's counsel **did** ask Ms. Moore about a civil suit being a motive for her testimony **without constraint** from the trial court. Questioning by Appellant's counsel was as follows.

Q      All right; and isn't it a fact that you told the District Attorney at the last listing that you wanted to sue [Appellant], civilly sue –

                              ***

[Commonwealth]:      Objection, relevance.

[Defense counsel]:      It is relevant because it shows motive, Your Honor.

THE WITNESS:   Motive for what?

THE COURT:      You're not allowed to ask him questions.

THE WITNESS:   Oh.

THE COURT:      So [Defense counsel], so you can ask -- you can -- you can answer the question.

THE WITNESS: No. I did not tell the District Attorney that. Why would I want to sue him?

\*\*\*

Q Well isn't it a fact that you want to sue [Appellant], civilly?

A No. I really -- I'm tired of seeing him, to tell you the truth. I don't even understand why we're back here. I don't understand if all he got was a citation for Disorderly Conduct, why didn't he just pay the fine and instead of me having to take off work to come – to continuously come to Court for a fine when he

\*\*\*

[Defense counsel]: Your Honor -- Judge, I asked her one specific question.

THE COURT: And I think she answered it.

[Defense counsel]: Okay. That's fine, Judge.

THE COURT: Do you have any other questions, [Defense counsel]?

[Defense counsel]: I do not, Your Honor. Oh, I have one more question, Your Honor, if I may?

THE COURT: Of course.

\*\*\*

Q The supervisor who was above you, did he come and -- well it was a woman, I believe, is that correct?

\*\*\*

[Commonwealth]: Objection, relevance.

THE COURT: Tell me where this is going, [Defense counsel]?

[Defense counsel]:    The question is going to as to whether or not she was taken back by the supervisor because she was acting rowdy?

THE WITNESS:    No. I wasn't, because my supervisor was the one that called the police on him.

[Defense counsel]:    I have no further questions, Your Honor.

*Id*. at 12-14.

Upon this record, we conclude that the trial court's evidentiary rulings at trial do not warrant relief.[3]

Appellant's remaining issues concern the trial court's rulings at the August 9, 2016 reconsideration hearing.  Appellant was proceeding *pro se*, brought witnesses he sought to have testify, and indicated a desire to cross-examine Ms. Moore again.  The trial court clarified that the reconsideration hearing was not a new trial, but rather an "opportunity to say what it was that [Appellant] think[s] that [the trial court] missed when [it] made [its] decision."  N.T. Reconsideration, 8/6/16, at 4.  Appellant then complained that the Commonwealth did not provide discovery materials, particularly information from witnesses who were not called at the trial.  *Id*. at 5-6.  The trial court explained to Appellant that there is no right to pretrial discovery in

_____

[3] Appellant at oral argument also contended that he was prohibited from offering his own witnesses at trial.  The record belies that assertion.  As indicated above, counsel presented Ms. Stamm as a character witness, then indicated that he would forego calling the other two who were present because "it would be redundant."  N.T. Trial, 5/17/16, at 27.

a summary appeal matter. *Id*. at 6-8. The trial court advised Appellant that he could challenge the trial court's rulings in an appeal to this Court. *Id*. at 10, 11, 14.

On appeal, Appellant contests the trial court's refusal to allow his character witnesses to testify at the reconsideration hearing, as well as the trial court's indication that the summary appeal process is "trial by ambush." Appellant's brief at 16. No relief is due.

Regarding the trial court's refusal to allow Appellant's character witnesses to testify, we see nothing to indicate that these were new witnesses other than the ones who were available, but not called by counsel, at Appellant's trial. Nor did he point to any type of new evidence that was discovered after his trial, that could not have been obtained earlier, and that would likely result in a different verdict if a new trial were granted. Accordingly, Appellant has not shown that the trial court erred in refusing to award a new trial. *See*, *e.g.*, *Commonwealth v. Padillas*, 997 A.2d 356, 363-64 (Pa.Super. 2010) (explaining the requirements for a new trial to be awarded based upon after-discovered evidence).

Nor has Appellant shown that a new trial was warranted due to a discovery violation. Pretrial discovery is governed by Pa.R.Crim.P. 573, which requires mandatory disclosures by the Commonwealth in "all court cases."

Pa.R.Crim.P. 573(B)(1).[4]  Summary cases are not "court cases" for purposes of the discovery rule.  **See** Pa.R.Crim.P. 573, Comment; Pa.R.Crim.P. 103. Hence, Appellant had no rule-based right to any disclosures from the Commonwealth unless they were mandated by **Brady v. Maryland**, 373 U.S. 83 (1963).  **Commonwealth v. Lutes**, 793 A.2d 949, 960 (Pa.Super. 2002) ("Since summary cases are not 'court cases,' pretrial discovery does not apply to Appellants unless **Brady** or its progeny require otherwise.").

> **Brady** and its progeny dictate that, when the failure of the prosecution to produce material evidence favorable to the accused raises a reasonable probability that the result of the trial would have been different if the evidence had been produced, due process has been violated and a new trial is warranted.

**Commonwealth v. Blakeney**, 108 A.3d 739, 772 (Pa. 2014).

A defendant must prove a **Brady** claim to obtain relief.  **Id**.  It is insufficient for a defendant to rely upon speculation as to the existence or content of undisclosed witness reports.  **Id**. ("The argument that common sense and logic prove the existence of wholly hypothetical reports is unavailing[.]").

---

[4] Rule 573 "implements the overall policy of the discovery rules aimed at preventing 'trial by ambush[.]'"  **Commonwealth v. Hanford**, 937 A.2d 1094, 1100 (Pa.Super. 2007).  Because the discovery rules do not apply to summary proceedings, the trial court accurately informed Appellant that "in a summary appeal, it's a trial by ambush."  N.T. Reconsideration, 8/9/16, at 9. While members of the bar are familiar with this terminology, Appellant apparently is not, expressing astonishment "that a member of the bench in any jurisdiction would make such a statement[.]"  Appellant's brief at 16. Nonetheless, it is an accurate statement of the law in lay terms.

Here, Appellant has nothing beyond arguments appealing to logic to establish that the Commonwealth had evidence that was favorable to him. *See*, *e.g.*, Appellant's brief at 9 ("Does it not strain credulity that in a circumstance as described by the complainant, that the police officer would not have spoken to the 'person in charge of the store' or to one of the managers or to at least another employee to corroborate the incident?"). As such, Appellant has failed to prove a *Brady* violation.

This Court is an error-correcting court. *Commonwealth v. Wood*, 833 A.2d 740, 748 (Pa.Super. 2003). Appellant has failed to establish that the trial court committed any errors. Therefore, as steadfastly as Appellant argues that he is innocent of disorderly conduct, he is entitled to no relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2018

- 15 -